# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| CHARLES WILEY, | : | |
| Plaintiff, | : | Case No.  3:04CV447 |
| vs. | : | District Judge Walter Herbert Rice |
| | | Magistrate Judge Sharon L. Ovington |
| WRIGHT STATE UNIVERSITY, *et al*., | : | |
| | : | |
| Defendants. | : | |
| | : | |

## REPORT AND RECOMMENDATIONS[1]

## I.      INTRODUCTION

Plaintiff Charles Wiley, a resident of Dayton, Ohio, brings this case *pro se* against his former employer, Defendant Wright State University, and numerous individuals.

Wiley alleges in his Complaint that his supervisor at Wright State University required him to work for two days with hazardous chemicals in a closed area without either a mask or ventilation.  According to Wiley, this caused him to be sick to the point he coughed up blood.

Wiley further alleges that Defendants improperly used his sickness as a reason for terminating his employment because he had submitted a note from his physician, along with other medical evidence, establishing that he had suffered from a physical impairment since 2001 and needed an accommodation.

The Court previously  reviewed Wiley's Complaint *sua sponte* as required by 28 U.S.C.

---

[1]  Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

§1915(e)(2)(B)(i) and concluded that it raised a non-frivolous claim under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§12101, *et seq.*  (Doc. #4 at 2-3).

The case is presently before the Court upon Defendants' Motion for Summary Judgment and Memorandum and Exhibits in Support (Doc. #42), Plaintiff's Notice of Rebuttal and Supporting Exhibits (Doc. #45), Defendants' Reply (Doc. #46), and the record as a whole.

## II.    FACTUAL BACKGROUND

Wright State University ("WSU") hired Wiley in 2000 to work as an Environmental Services Worker in the Physical Plant.  (Doc. #42, Exhibit A at ¶4).  In this position, Wiley provided custodial services for WSU.

In late 2002, Wiley took temporary leave from his job under the Family Medical Leave Act of 1993.  (Doc. #42, Exhs. A-4, A-5).  WSU's FMLA leave form, which Wiley signed, explained, in part, that his FMLA "will run concurrently with all other applicable leave types (e.g., sick leave, worker's comp)...."  (Doc. #42, Exh. A-4).[2]  The FMLA form elsewhere more specifically explained that under WSU's written policy ("Wright Way Policy 4203.1(d)(5)"), accrued paid leave ran concurrently with FMLA leave.  (Doc. #42, Exh. A-4).  After Wiley's leave expired in late 2002, he returned to work at WSU.

In August 2003, Wiley injured his lower back while emptying a mop bucket.  (Doc. #42, Exh. A at ¶13).  Wiley continued to work for about a week and a half, completing eight-hour work days on August 6-8 and 11-14, 2003.  (Doc. #42, Exh. A-6 at p.3).  He also worked 4.3

---

[2]  In general, the FMLA permits an employee to elect, or an employer to require, the substitution of other types of accrued with FMLA leave.  *See* 29 U.S.C. §2612(d)(1)-(2).  This substitution typically permits employers to run FMLA leave concurrent with other types of accrued leave.  *See Strickland v. Water Works and Sewer Bd. of Birmingham*, 239 F.3d 1199, 1205-06 (11th Cir. 2001).

2

hours on August 15, 2003 before leaving work for a doctor's appointment.  Wiley then took FMLA leave beginning on August 15, 2003.  (Doc. #42 at p. 3).  His leave continued until November 21, 2003, and he returned to work the next day.  *Id*; *see* Doc. #42, Exh. A at ¶16; *see also* Exh. A-6 at p. 3.

Throughout this period of FMLA leave Wiley provided WSU with notes from his physician.  Again, as in 2002, Wiley's accrued paid leave ran concurrently with his FMLA leave, pursuant to Wright Way Policy 4203.1(d)(5).  (Doc. #42, Exh. B-1).

After returning to work, Wiley worked as scheduled until December 18, 2003 when he was absent from work.  He reported this absence to his supervisor.  (Doc. #42, Exh. A at ¶17).  Yet, because this absence lasted a full eight-hour workday and because Wiley had only 3.85 hours remaining in sick leave, his full workday absence exceeded his available leave.  (Doc. #42, Exh. A-6 at p. 1).  Consequently, WSU's Manager of Environmental Services found that Wiley's December 18th absence "left him in an unpaid leave status."  *Id*.  This, along with a prior a similar absence while on unpaid leave status (on June 16, 2003), led the Manager of Environmental Services to request a "Due Process Meeting" for Wiley.  *Id*.

Before the Due Process meeting took place, Wiley had another attendance problem:  he did not use the proper call-in procedure on January 2, 2004.  (Doc. #42, Exh. A at ¶17; Exh. A-6 at 4).

WSU held a Due Process Meeting on January 29, 2004 "to investigate Plaintiff's failure to report to work on December 18, 2003 and his failure to call-in on January 2, 2004." (Doc. #42 at p. 4).  WSU asserts, "As a result of the evidence presented at the hearing, WSU terminated Plaintiff's employment on February 3, 2004.  His termination was precipitated by

3

poor work performance and a failure to use proper call-in procedure." *Id.* (citation and footnoted omitted).

On February 24, 2004, Wiley filed charges of discrimination with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"). Wiley claimed in these charges that WSU terminated his employment because of his race and religion. (Doc. #42, Exh. B-2).

After investigating Wiley's charges, the OCRC found them meritless and dismissed his charge. *Id.* The OCRC explained, in part, "The investigation revealed that Charging Party [Wiley] was terminated for his overall poor work performance, for being on an unpaid leave status on December 18, 2003, and for failing to use the proper call-in procedure on January 2, 2004." (Doc. #42, Exh. B-2 at p.1).

On September 24, 2004, the EEOC adopted the OCRC's findings and issued Wiley a Dismissal and Notice of Rights. (Doc. #42, Exh. B-3). Wiley then filed his Complaint in this Court thus beginning the present case.

The main issue presently pending is whether Defendants are entitled to summary judgment.

## III.    SUMMARY JUDGMENT STANDARDS

The threshold issue presented by a Motion for Summary Judgment is whether or not the case presents a proper jury question. *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A proper jury question exists where the record contains a genuine dispute as to any material fact. *See Celotex*, 477 U.S. at 322; *see also Anderson*, 477 U.S. at 247. If no genuine dispute exists as to any material fact,

4

then the moving party is entitled to judgment as a matter of law and summary judgment is warranted.  *See* Fed. R. Civ. P. 56(c); *see also Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 247.

A defendant seeking summary judgment bears the initial burden of showing that the plaintiff has failed "to establish an essential element of his case upon which [the plaintiff] would bear the ultimate burden at trial."  *Celotex*, 477 U.S. at 322; *see Guarino v. Brookfield Tp. Trustees,* 980 F.2d 399, 403 (6th Cir. 1992).  If the defendant makes this showing, the plaintiff may not rely on the bare allegations of the Complaint "or on the hope that the that the trier of fact will disbelieve [the defendant's] denial of a disputed fact...."  *Street v. J.C. Bradford & Co*., 886 F.2d 1472, 1479 (6th Cir. 1989).  Instead, the plaintiff must "'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'"  *Id*. (quoting in part *Anderson*, 477 U.S. at 257); *see Adams v. Metiva*, 31 F.3d 375, 379 (6th Cir. 1994); *see also Guarino,* 980 F.2d at 403.

What must the plaintiff's affirmative evidence show?

Affirmative evidence is sufficient if, construing it in the plaintiff's favor, it would permit a reasonable jury to find in the plaintiff's favor.  *See Anderson*, 477 U.S. at 248; *see Guarino*, 980 F.2d at 403.  Affirmative evidence must therefore consist of "more than a scintilla of evidence" and accomplish more than creating "some metaphysical doubt" about a factual issue.  *See Street*, 886 F2d at 1479-80 (and cases cited therein).  If the plaintiff fails to present such affirmative evidence, then there is no need for a trial since there are no "genuine factual issues that properly can be resolved only by a finder of fact...."  *Anderson*, 477 U.S. at 247-48; *see Celotex*, 477 U.S. at 322-23; *see also Guarino*, 980 F.2d at 403.

5

IV.    TITLE VII AND THE PARTIES' CONTENTIONS

Although the Court previously determined that Wiley's Complaint raised a non-frivolous claim under the ADA (Doc. #4 at 2-3), Defendants understandably focus on Wiley's claims of race and religious discrimination because these are the only discrimination claims Wiley raised in his OCRC and EEOC charges.  Defendants correctly recognize Wiley's claims of race and religious discrimination arise under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-2, *et seq*.  Title VII provides in part:

> It shall be unlawful employment practice for an employer ... to discharge any individual or otherwise discriminate against an any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin....

42 U.S.C. §2000e-2(a)(1).

Defendants contend that they are entitled to summary judgment on Wiley's Title VII claims first because Wiley has not produced direct evidence of discrimination. This contention is well taken because Wiley's Rebuttal Memorandum and supporting Exhibits do not contain any direct evidence of race or religious discrimination.  *See* Doc. #45.  Wiley's case therefore turns on whether he has produced circumstantial evidence of discrimination.  *See Talley v. Bravo Pitino Restaurant, Ltd*., 61 F.3d 1241, 1246 (6th Cir. 1995) (Title VII plaintiff may rely on either direct or circumstantial evidence to show  intentional discrimination).

To determine whether Wiley has produced circumstantial evidence of employment discrimination, the Court applies the three-step burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).  *See McClain v. NorthWest Community Corrections Center*, 440 F.3d

6

320, 332 (6th Cir. 2006). The analysis proceeds as follows:

| | |
|---|---|
| Step One: | Wiley must present evidence showing a *prima facie* case of discrimination. If he succeeds, the analysis continues. |
| Step Two: | The burden shifts to the WSU to articulate a legitimate non-discriminatory reason for its employment decision. If WSU meets this burden of production, the analysis proceeds. |
| Step Three: | Wiley must demonstrate that WSU's proffered reason was a pretext for intentional discrimination. |

*See McClain*, 440 F.3d at 332; *see also Sullivan v. River Valley Sch. Dist.*, 197 F.3d 804, 810 (6th Cir. 1999).

Defendants contend that Wiley cannot establish a *prima facie* case of discrimination and that Wiley cannot show that WSU's legitimate, non-discriminatory reason for discrimination was a pretext for discrimination.

Wiley contends that because Defendants have acknowledged he was injured at work and has "medical shortcomings," Defendants have "already established for [Wiley] and the court that [he] was terminated for being disabled." (Doc. #45 at 2). Wiley maintains that his work performance was not poor; he instead was "a very good worker." *Id*. He also asserts that he attempted, without success, to get WSU management to investigate his charge that he "was in a very hostile work [e]nvironment." *Id*.

Wiley emphasizes that his supervisor forced him to work in unsafe conditions. He explains that on two occasions, he became sick from toxic fumes emanating from chemicals used on bathroom floors. He also contends, "I do not believe my charges were fully investigated by the O.C.R.C. and the EEOC went along with their findings...." *Id*.

## V.    DISCUSSION

7

A.    **Wiley's Title VII Claims**

To establish a *prima facie* case under Title VII, Wiley must show that (1) he is a member of a statutorily protected class; (2) he suffered an adverse action; (3) he was qualified for his position; and (4) that a similarly situated non-protected employee was treated more favorably than Wiley or that Wiley was replaced by someone outside the protected class.  *See McClain*, 440 F.3d at 332 (citing *McDonnell Douglas* and *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999)); *see Talley*, 61 F.3d at 1246.

Defendants contends that Wiley's *prima facie* case fails on the third element because his employment history shows he was not qualified for his job.  This contention is problematic because it appears that Defendants intermingle the job-qualifications inquiry at the *prima facie* stage with its legitimate non-discriminatory reasons at stage two of the *McDonnel-Douglas/Burdine* analysis.

The focus on a Title VII plaintiff's job qualifications at the *prima facie* stage targets the plaintiff's "*objective* qualifications ... for the relevant job."  *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 575 (6th Cir. 2003)(*en banc*) (emphasis in original). An employee's qualifications must at least be "equivalent to the minimum objective criteria required for employment in the relevant field.  Although the specific qualifications will vary depending on the job in question, the inquiry should focus on criteria such as the plaintiff's education, experience in the relevant industry, and demonstrated possession of the required general skills."  *Wexler*, 317 F.3d at 576.

Defendants do not focus on Wiley's objective qualifications.  Rather, Defendants point to certain disciplinary problems Wiley had with unpaid leave, and his failure to follow his

8

supervisor's instructions and failure to complete a certain job assignment.  (Doc. #42 at 8).

Defendants do not assert that Wiley's disciplinary problems and other failures arose from his

lack of <u>objective</u> job qualifications, such as his lack of the general skills needed to perform his

job.  *See id*.  As a result, Defendants have not challenged Wiley's objective job qualifications

and summary judgment in their favor is unwarranted based on the third element of his *prima*

*facie* case.  *See Wexler*, 317 F.3d at 576.  It is worth pausing to note that Wiley has not done

much better on this issue because he only raised the bare assertion that he was a "very good

worker."  (Doc. #45 at 2).  Accepting this at face value, and in the absence of a contrary

indication concerning a lack of his objective job qualifications, Wiley has met his minimal, non-

onerous burden at the *prima facie* stage.  *See Burdine,* 450 U.S. at 253 ("The burden of

establishing a prima facie case of disparate treatment is not onerous."); *see also Cline v. Catholic*

*Diocese of Toledo*, 206 F.3d 651, 660 (6th Cir. 2000) (*prima facie* requirement "is not onerous"

... and "poses a burden 'easily met.'")(citations omitted).  This conclusion, although favorable to

Wiley, does not mean that he has established all the elements of his *prima facie* case.  The fourth

element remains.

Defendants contend that Wiley's *prima facie* case fails at the fourth element because he

cannot identify a similarly-situated non-minority employee who was treated more favorably by

WSU.  This contention is well taken.

To establish the fourth element of a *prima facie* case, Wiley must point to an employee

who was similarly situated to her in all relevant respects.  *See Ercegovich v. Goodyear Tire &*

*Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).  He has not done so.  *See* Doc. #45.  Wiley also

presents no evidence from which it could be reasonably concluded that WSU did not terminate

the employment of a similarly-situated non-minority employee, who had committed the same or similar unpaid leave infractions that Wiley committed. His *prima facie* case therefore fails on the fourth element.

In addition, even if Wiley has established a *prima facie* case of discrimination, he cannot demonstrate that WSU's legitimate non-discriminatory reason for terminating his employment was a pretext for intentional discrimination. WSU asserts that it terminated Wiley's employment due to his attendance and behavioral issues as well as his poor work performance, presumably the failure to follow his supervisor's instructions and failure to complete a certain job assignment. (Doc. #42 at 8-9). Because these reasons constituted an adequate non-discriminatory basis for terminating Wiley's employment, Defendants have satisfied the burden of production at stage two of the *McDonnell Douglas/Burdine* analysis. The burden thus falls upon Wiley to show pretext at stage three of *McDonnell Douglas/Burdine*. *See McClain*, 440 F.3d at 332; *see also Sullivan*, 197 F.3d at 810.

To show that WSU's asserted reasons for termination were a pretext, or a cover-up, for discrimination, Wiley may proceed by raising any of the following three challenges:

    1.    WSU's asserted reasons had no basis in fact; or

    2.    WSU's asserted reasons did not actually motivate the termination of his employment; or

    3.    These reasons were insufficient to motivate his termination.

*See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). Wiley has not described circumstances giving rise to any of these challenges to WSU's legitimate, non-discriminatory reasons for termination. *See* Doc. 45. Wiley has also not produced affirmative evidence upon which a reasonable jury could conclude in his favor on any of these three

challenges to WSU's reasons for terminating his employment. *See id*. (attached Exhibits).  He

has therefore failed to demonstrate the existence of a genuine dispute of material fact concerning

pretext.

Accordingly, Defendants are entitled to summary judgment on Wiley's Title VII claims.

### B. <u>ADA Claims</u>

To the extent that Wiley seeks to raise a claim under the ADA, it appears he did not raise

this claim in the charges of discrimination he filed with the EEOC.  *See* Doc. #45 (attached

Exhibits); *see also* Doc. #42, Exhs. B-2, 3.  As a condition precedent to raising an ADA claim in

this Court, Wiley was required to exhaust his administrative remedies by raising his ADA claim

in his EEOC or OCRC charge.  *See* 42 U.S.C. § 2000e-5(f)(1); 42 U.S.C. §12117(a) (procedures

from §2000e-5 apply to ADA claims); *see also Parry v. Mohawk Motors of Michigan, Inc*., 236

F.3d 299, 309 (6th Cir. 2000).  His failure to do so prevents him from proceeding further with an

ADA claim in this case.  *See Jones v. Sumser Retirement Village*, 209 F.3d 851, 854 (6th Cir.

2000)("Jones failed to exhaust her administrative remedies by not including the failure to

accommodate allegation when she filed her claim with the OCRC.  Therefore, she was precluded

from bringing up that issue at the time she filed her claim in court.).

In addition, although medical leave may, in some circumstances, constitute a reasonable

accommodation, *see Brenneman v. MedCentral Health System*, 366 F.3d 412, 418 (6th Cir.

2004), "[a]n employee who cannot meet the attendance requirements of the job at issue cannot

be considered a 'qualified' individual protected by the ADA."  *Gantt v. Wilson Sporting Goods

Co.,* 143 F.3d 1042, 1047 (6th Cir.1998).  It is undisputed that WSU provided Wiley with FMLA

leave and other medical leave from August 15, 2003 until November 21, 2003, when he returned

to work.  *See* Doc. #42, Exh. A at ¶s 15-16.  It is also undisputed that after he returned to work on November 22, 2003, WSU continued to credit Wiley with the remaining leave he had remaining and continued to accrue.  Then, when Wiley was absent on December 18, 2003, WSU credited him with all his then-available leave time (3.85 hours of sick leave).  Without a full eight-hours of leave available to him, his full workday absence placed him on his unpaid leave status.  (Doc. #42, Exh. A-6 at p. 1).

In these undisputed circumstances, the ADA did not require WSU to provide Wiley with any additional leave as a reasonable accommodation for an ADA-covered disability.  *See Gantt*, 143 F.3d at 1047; *see also Brenneman*, 366 F.3d at 418-19 (and cases cited therein).

Accordingly, for these reasons, Defendants are entitled to summary judgment on Wiley's ADA claim.

### C. <u>Individual Defendants</u>

Defendants contend that the individual Defendants cannot be held liable under Title VII. This contention is well taken.

Individual supervisors who do not independently meet the statutory definition of an "employer" may not be held personally liable under the ADA or Title VII.  *See Sullivan v. River Valley Sch. Dist*., 197 F.3d 804, 808 n.1 (6th Cir. 1999); *see also Wathen v. General Electric,* 115 F.3d 400, 404-05 (6th Cir.1997).

Wiley has alleged no fact and has not presented any evidence indicating that the individual Defendants are "employers" within the meaning of the Title VII or the ADA.  As a result, no reasonable jury could find that these Defendants satisfy the statutory definition of an "employer" under the ADA or Title VII.  *See Sullivan*, 197 F.3d at 808 n.1; *see also Wathen,* 115

F.3d at 404-05.

Accordingly, the individual Defendants are entitled to summary judgment on Wiley's claims under Title VII and the ADA.

## IT IS THEREFORE RECOMMENDED THAT:

1.      Defendants' Motion for Summary Judgment (Doc. #42) be GRANTED; and

2.      The case is terminated on the docket of this Court.


July 9, 2007

                                               s/ Sharon L. Ovington
                                                 Sharon L. Ovington
                                      United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by mail.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within ten days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140 (1985).

14